IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

IN RE: GARY AND PAMELA PRICE           CASE NO. 3:06-BK-15813
    Debtors

**GARY L. PRICE and PAMELA J. PRICE**           **PLAINTIFFS**

v.           AP NO.: 3:07-ap-01184

**AMERICA'S SERVICING COMPANY**           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SET ASIDE ENTRY OF DEFAULT AND GRANTING MOTION TO STRIKE ANSWER

On December 6, 2007, the Court heard the *Amended Motion for Entry of Default Judgment and Motion for Hearing to Determine Damages* filed by Plaintiffs Gary L. Price and Pamela J. Price (the "**Debtors**"), and the *Response to Motion for Default Judgment and Motion to Set Aside Entry of Default* filed by America's Servicing Company ("**ASC**"). Joel Hargis ("**Hargis**") appeared for the Debtors, and Frederick Wetzel ("**Wetzel**") appeared on behalf of ASC. At this hearing, both parties presented arguments and the matter has since been under advisement. After the hearing, Wetzel filed an *Entry of Appearance and Request for Notices* on behalf of ASC. Hilary Bonial ("**Bonial**") and Joe Lozano ("**Lozano**") of Brice Legal Group, P.C. are also counsel of record.

### PROCEDURAL BACKGROUND

The Debtors filed their Complaint against ASC on June 12, 2007. A Summons was issued the same day requiring an Answer to the Complaint be submitted by July 12, 2007.

Debtors filed a Certificate of Service showing that they had served the Summons on ASC's counsel Bonial on June 21, 2007. ASC did not answer by July 12. On July 13, 2007, the Debtors filed a *Motion for Entry of a Default Judgment and Motion for Hearing to Determine Damages,* and on July 15, 2007, filed an *Amended Motion for Entry of Default Judgment and Motion for Hearing to Determine Damages*[1] (the "**Motion for Default Judgment**"). On July 15, 2007, ASC filed an *Objection to Amended Motion for Entry of Default Judgment and Motion for Hearing to Determine Damages* and an *Amended Objection to Amended Motion for Entry of Default Judgment and Motion for Hearing to Determine Damages* ("**ASC's Objection to Default**") claiming that ASC was not properly served the Complaint. A hearing was held on August 9, 2007, on the Debtor's Motion for Default; Hargis appeared on behalf of the Debtors, and Kimberly Burnette ("**Burnette**") appeared on behalf of ASC.[2] The matter was taken under advisement. This Court entered an *Entry of Default and Notice of Opportunity to Respond to Motion for Default Judgment* ("**Entry of Default**") on October 23, 2007 (docket #19), finding that service on Bonial, as ASC's agent, was proper.

---

[1] Although Plaintiffs moved for default judgment, it is the Court's routine procedure to treat such a motion as a Motion for Entry of Default because the clerk must enter a party's default pursuant to Fed. R. Bankr. P. 7055(a) before the Court may award default judgment pursuant to Fed. R. Bankr. P. 7055(b). Once default has been entered, the Court will rule on the motion for default judgment.

[2] On August 7, 2007, Bonial filed a *Motion for Admission Pro Hac Vice* on behalf of Tyler Jones (Attorney at Brice, Vander, Linder & Wernick, P.C.) to represent ASC at the hearing on August 9, 2007, in Jonesboro, Arkansas, in the Adversary Proceeding. The Motion was not ruled on before the August 9, 2007 hearing, due to ASC's failure to designate local counsel. The Court will deny the motion as MOOT by separate order.

On September 13, 2007, prior to the Court's Entry of Default, but after the Debtors' Motion for Default Judgment and ASC's Objection to Default were taken under advisement, Bonial filed ASC's Answer. Debtors then filed a *Motion to Strike Answer*, and on behalf of ASC, Lozano filed a *Response to Plaintiff's Motion to Strike Answer*. That motion and response are as yet unresolved, but will necessarily be determined by this Memorandum Opinion.

After the Court entered default, ASC filed its *Response to Motion for Default Judgment and Motion to Set Aside Entry of Default*, which was heard on December 6, 2007. The Debtors' Motion for Default Judgment was then ripe for consideration, was argued at the December 6, 2007 hearing, and will be the subject of a separate Order.

This Memorandum Opinion sets forth the Court's reasoning for denying ASC's *Motion to Set Aside Entry of Default* and for granting the Debtors' *Motion to Strike Answer*.

## THE DEBTORS' COMPLAINT

The Debtors filed for chapter 13 Bankruptcy on December 18, 2006. The Debtors have a loan secured by a mortgage on their residence which is serviced by ASC. Prior to the Debtors filing bankruptcy, their mortgage was placed in foreclosure status. Around the end of January 2007, ASC filed a Proof of Claim asserting the Debtors were in arrearage in the amount of $10,411.02. Debtors filed their Complaint against ASC on June 12, 2007, for actual, statutory, and punitive damages, as well as reasonable attorney fees and costs, pursuant to §§ 105 and 362, 501, 502, 503 and 506 of the Bankruptcy Code; Federal Rules of Bankruptcy Procedure 2016 and 7001; the Fair Debt Collection Practices Act, 15 U.S.C.

3

§ 1692 *et seq.*; and the Real Estate Settlement and Procedures Act, §§ 2605(e)(1)(A) and 2605(e)(1)(B)(2) of Title 12 of the United States Code and §§ 3500.21(e)(1) and 3500.21(e)(3) of Regulation X. Debtors also seek to disallow or determine the amount of ASC's claim in Debtors' bankruptcy.

The Court understands the crux of Debtors' Complaint to be that ASC applied part of the Debtors' regular monthly mortgage payments to pay hazard insurance premiums and property taxes, which the Debtors had elected, pursuant to their mortgage documents, to pay themselves. This misapplication of payments caused the Debtors to be behind on their payments, and ASC to begin foreclosure proceedings. Specifically, Debtors claim that despite making every mortgage payment up until October 2006, ASC placed Debtors' home in foreclosure. In December 2006, ASC issued an Escrow Account Statement to the Debtors. Debtors suspect ASC "diverted their monthly mortgage payments to an escrow account to pay their insurance premiums," because when Debtors attempted to pay their insurance premiums in April 2007 for the following year, they were informed by their insurance agent that ASC had already paid the premiums. ASC generally denied these allegations and provided no explanation or proof that the monthly mortgage payments were not diverted to pay insurance premiums.

The Debtors further allege that the supporting documentation for ASC's Proof of Claim identified certain questionable fees and costs which have been charged to the Debtors' account, including late charges totaling $320.41, pre-petition attorney fees and costs of $1,861.80, and other pre-petition fees, expenses, and charges such as inspection fees,

4

appraisal fees, NSF check charges. ASC's Proof of Claim listed missed regular monthly payments totaling $8,043.81; Debtors allege that the Proof of Claim fails to credit the Debtors' account the sum of $2,796.08 in regular monthly mortgage payments made between the months of May 2006 and August 2006. ASC admits that it received three mortgage payments between May 2006 and September 2006, but denies that it received a mortgage payment specifically for May 2006 or September 2006.

Debtors also claim ASC is inappropriately charging post-petition attorney's fees, costs and other charges. Additionally, while Debtors admit their note includes an adjustable rate provision on the amount of the interest, they claim they were not notified of an increase of three percent in their interest rate that took effect around April 2006. Debtors claim the interest rate provision required ASC to notify the Debtors of any change in the interest rate. ASC admits that it was required to notify Debtors of the change in interest rate, but generally denies that it failed to do so. However, ASC provides no proof of such notice or even an allegation that it did provide such notice.

Debtors also allege in their Complaint that in February 2007, Debtors' counsel sent ASC a qualified written request ("**QWR**") requesting various documents relating to the servicing of their mortgage. Debtors allege that ASC responded, claiming that the documents requested are privileged. Debtors believe they are entitled to view these documents as third party beneficiaries.

**DISCUSSION**

In this case, this Court examines whether to set aside the *Entry of Default* previously entered. Because an entry of default may lead to the entry of a default judgment (if the complaint sets forth facts sufficient to state a claim for relief), the Court must also consider the extent to which default judgments are disfavored. "[W]hen a grant of default judgement precludes consideration of the merits of a case, even a slight abuse of discretion may justify reversal." *Johnson,* 140 F.3d at 785, citing *Shepard Claim Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir, 1986). Additionally, there is a "judicial preference for adjudication on the merits [that] goes to the fundamental fairness of the adjudicatory process." *Oberstar v. Fed. Deposit Ins. Corp.*, 978 F.2d 494, 504 (8th cir. 1993).

The standard for setting aside an entry of default is for "good cause shown" as set forth in Federal Rule of Civil Procedure (FRCP) 55(c) (made applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7055). It is important to distinguish between the different standards applied when setting aside an entry of default as opposed to setting aside a default judgment which is governed by FRCP 60(b) (made applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024). This "good cause" standard is more lenient on the defaulting party than the "excusable neglect" standard applied when a court considers setting aside a default judgment as laid out in FRCP 60(b). In showing good cause to set aside an entry of default, the Eighth Circuit states a court should look at "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party

has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 784 (8th Cir. 1998). **"'Failure to show any one of these elements would require denial of a motion to vacate.'"** *Super 8 Motels, Inc. v. Deer Lodge Super 8, Inc.,* 2007 WL 4246454, 2 (D.S.D. 2007) (quoting *Chandler Leasing Corp. v. UCC, Inc.,* 91 F.R.D. 81, 84 (N.D. Ill. 1981) (emphasis added)).

The Court finds that ASC failed to prove all three of these elements, and although ASC's failure to prove just one element would require a denial of ASC's Motion to Set Aside Default, the Court sets forth its analysis and findings on each of these elements below to provide a more thorough explanation of its decision not to allow the case to proceed to trial.

**A.     Blameworthy or Culpable Conduct.**

In determining if the defaulting party's conduct is culpable or blameworthy, this Court, in accordance with the Eighth Circuit, distinguishes "between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines. We have rarely, if ever, excused the former." *Johnson*, 140 F.3d at 784. *See Hall v. T.J. Cinnamon's, Inc.*, 121 F.3d 434 (8th Cir. 1997); *Inman v. American Home Furniture Placement, Inc.*, 120 F.3d 117 (8th Cir. 1997); *McMillian/McMillian, Inc. v. Monticello Ins. Co.*, 116 F.3d 319 (8th Cir. 1997); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852 (8th Cir. 1996). Culpable conduct must be determined by first considering both qualitative and quantitative factors.

> The qualitative component looks at the reason for the failure to respond while the quantitative component looks to the length of the delay in responding to the complaint as well as the entry of default.

*Doolin v. McLeodUSA Network Servs.*, 2001 U.S. Dist. LEXIS 20017, at *5 (N.D. Iowa, Nov. 19, 2001). *See Johnson*, 140 F.3d at 784. The Eighth Circuit has previously stated that "it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." *Johnson,* 140 F.3d at 784.

ASC argues that its failure to timely answer is merely a technical default and should be set aside. ASC points out that it filed an objection to Debtors' Motion "within a day or two" of being in default. ASC also points out that it filed a response to the Debtors' *Motion to Strike Answer* in a timely manner.

The Court first addresses ASC's 58-day delay in filing an Answer. ASC filed its Answer after it objected to the Debtors' Motion for Default Judgment, and after the Court took the issue of whether to enter default against ASC under advisement. Due to ASC's timely response to the Debtors' Motion for Default Judgment, and the Court's consideration of whether service of the Debtors' Complaint was proper, ASC's delay in filing an Answer did not cause any undue delay in the progress of the case. As such, the Court does not find ASC's delay in answering evidence of culpable conduct.

However, ASC's reason for not answering warrants further consideration. ASC contends that it did not file its answer within the time allowed because it was not properly

served. At a hearing held August 9, 2007, ASC sent Burnette to the hearing to argue service was not proper. Specifically, Burnette argued that Bonial was hired as counsel with respect to the proof of claim filed by ASC in the main bankruptcy case, but that Bonial had not been hired to represent ASC in this adversary proceeding. Further, while never specifically alleging that the Summons and Complaint were not delivered to her law firm, Bonial asserted in ASC's Objection to Default that the Summons and Complaint were delivered to the wrong person at the wrong address, and that Bonial did not become aware of the default until she reviewed the Court's docket on another matter.

Debtors point out that two copies of the Summons and Complaint were received by Bonial's office; one was signed for (by B. Davenport), and one was confirmed delivered.[3] Debtors argue that ASC's assertion regarding service evidences "a lack of genuineness to this Court and a lack of candor." Debtors argue that an attorney has a duty to investigate the facts she asserts in any pleading or motion that she signs and files with a court of law. Debtors claim that either ASC "did not investigate and asserted that they did not receive them, . . . or secondly, they investigated and made their argument anyway," which is "tantamount to fraud on the Court." Debtors also assert that Bonial's argument that she was not the agent for service on ASC conflicts with an Answer she filed (also on August 9, 2007) in an adversary

---

[3]This evidence was introduced at the August 9, 2007 hearing and is a part of the record in this case.

9

proceeding against Wells Fargo Bank, N.A.[4] (4:07-ap-1198) (the "**Akins case**") in Judge James G. Mixon's court.  According to Debtors, Bonial was served in the same way in the case before Judge Mixon as she was in this case.  The Debtors introduced the following exhibits relating to the Akins case to prove this allegation:  Exhibit A (the Summons); Exhibit B (the Certificate of Service for the Summons); and Exhibit C (Wells Fargo's Answer).

Debtors also introduced evidence that Bonial was served orders and hearing notices by regular mail in a case before Judge Ben Barry (*In re Charles and Irmgard Graves*, 5:07-bk-70245) (the "**Graves case**"), but repeatedly failed to appear in Court.  Due to Bonial's failure to appear, Judge Barry prohibited Bonial from practicing before the Bankruptcy Court in the Eastern and Western Districts of Arkansas.  However, Judge Barry subsequently granted Bonial's Motion to Reconsider on the condition that Bonial voluntarily withdraw her admission to practice in this Court for a six-month period expiring on April 15, 2008, and upon other conditions relevant to that particular case.  In support of this argument, Debtors introduced Exhibit D (an Order to Show Cause entered by Judge Richard Taylor[5] ordering

---

[4]In another case involving ASC, *Moffitt v. America's Servicing Company*, 3:07-ap-1054, a representative of ASC testified that America's Servicing Company is a fictitious name for Wells Fargo Bank and not a separate legal entity.  The Court takes judicial notice of that testimony.  *See* Fed. R. Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny*, 243 B.R. 720, 723 n.2 (Bankr. W.D. Ark. 2000).

[5]Judge Ben Barry was substituted for Judge Richard Taylor after Judge Barry's appointment to the bench, and Fayetteville division cases were assigned to him.

Bonial to appear and show cause why she should not be sanctioned for not complying with an Order to Submit Order); Exhibit E (an *Order to Show Cause* issued by Judge Barry for Bonial to appear and show cause as to why she should not be sanctioned for failing to appear at the hearing on the order issued by Judge Taylor); Exhibit F (an *Order to Show Cause* issued by Judge Barry after Bonial's failure to appear before Judge Barry with respect to the prior *Order to Show Cause*); Exhibit G (the *Order* prohibiting Bonial from practicing; and Exhibit H (Bonial's Motion for Reconsideration of the Order prohibiting her from practicing).

ASC objected to the admittance of Exhibits A through H on the grounds they are irrelevant and prejudicial because they are outside the scope of the conduct in this case. ASC asserted that Debtors were "trying to impute some kind of bad faith" to Bonial and her actions, rather than letting this case stand on its merits. The Court accepted the evidence over ASC's objection.

The Court finds Exhibits A through H support the Debtors' argument that Bonial did not investigate whether she received the Summons in this case. The Court finds the Debtors' argument that either ASC "did not investigate and asserted that they did not receive [the Complaint], . . . or secondly, they investigated and made their argument anyway," which is "tantamount to fraud on the Court" convincing. Debtors proved that their Complaint was delivered to Bonial at the address listed on her Request for Service which is also the same address where the Complaint in the Akins case was delivered. Had Bonial shown up in Court

11

and explained that she simply did not get the Complaint in this case (although it was delivered to her office), but that ASC was ready to proceed, the Court would be inclined to excuse a slightly tardy answer. However, ASC instead argued that: (1) Bonial was not the agent for service, and (2) Bonial's office did not receive the Complaint. Neither ASC nor its counsel has provided this Court with any proof or explanation to rebut the evidence provided by the Plaintiffs regarding service of the Complaint.

Further, the Court finds it particularly relevant that Bonial was served in the same way in another case involving the same defendant but filed a timely Answer, indicating that ASC's argument that Bonial was not the proper agent for service is disingenuous.[6] This Court has already found and entered an opinion explaining that based on the Request for Service Bonial filed in the Price's case-in-chief, Bonial was ASC's agent for service of process. The Court stated in its opinion supporting the Entry of Default:

> Additionally, the Request for Service filed by Bonial asks that Debtors "serve a copy of each notice of *any proceeding*, hearing, and/or report *in this matter*" on Bonial, and the signature block of this pleading states "**Authorized Agent for America's Servicing Corporation**." (Emphasis added). An adversary proceeding is a proceeding stemming from and related to the main bankruptcy case. *See In re Honigman*, 141 B.R. 69, 72 (Bank. E.D. Pa. 1992). As such, Bonial's Request for Service expressly authorized her as an agent to receive process for ASC.

---

[6] The Bankruptcy Court for the Southern District of Texas has likewise examined other cases filed in the same court involving the same parties in determining whether a failure to timely answer is excuseable. *See In re Devine*, 208 B.R. 658 (Bankr. S.D. Tex. 1995).

*In re Price,* 377 B.R. 224, 228 (Bankr. E.D. Ark. 2007). Bonial's argument that she was not the proper party to accept service directly contradicts the Request for Service which she filed in this same case. Although the Court rejected Bonial and ASC's argument that she was not the authorized agent for service of process, Bonial and ASC had two occasions in which they could have attempted to show their argument was at least made in good faith. However, at both the August 2007 hearing and the December 2007 hearing, rather than appearing herself, Bonial contacted local counsel shortly before the hearings and had such counsel stand in for her.[7] Further, ASC did not send a corporate representative to either of these hearings. Accordingly, anyone capable of explaining or providing evidence that the lack of service arguments were made in good faith failed to appear. Even after the Court found Bonial was ASC's agent for service of process, and that the Summons was accepted by Bonial's office, ASC offered no evidence to rebut those findings. Instead, ASC, given this second opportunity to explain, relied on case law disfavoring default judgments in an attempt to set aside the Court's Entry of Default. For these reasons, the Court concludes that ASC's defense was made in bad faith and is evidence of culpable behavior on ASC's part.

**B.    Meritorious Defense.**

Although the Court has found ASC's failure to timely answer evidence of culpable behavior, which alone supports the denial of ASC's Motion to Set Aside the Court's Entry

---

[7]With respect to the August 2007 hearing, local counsel Burnette stated she was contacted the afternoon before the hearing, and with respect to the December 2007 hearing, local counsel Wetzel stated that he had filed a notice of appearance an hour or so before the hearing.

13

of Default, the Court also examines whether the defaulting party has raised a meritorious defense. A *meritorious defense* is defined as a "defense that addresses the substance or essentials of a case rather than dilatory or technical objections." Black's Law Dictionary 452 (8th ed. 2004). It requires a proffer of evidence which "would permit a finding for the defaulting party." *Johnson*, 140 F.3d at 785. *See also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp*, 843 F.2d 808, 812 (4th Cir. 1988) (same holding as *Johnson*); *In re Roth*, 172 B.R. 777, 781 (Bankr. S.D.N.Y. 1994) (default set aside where defendant "presented a meritorious defense and proffered some evidence beyond conclusory denials to support his defense.").

ASC's Answer asserts conclusory denials and does not contain a meritorious defense to Debtors' Complaint, even though it was filed 58 days late after a Motion for Default Judgment had been filed, and after the Court had taken the issue of service under advisement. Nevertheless, ASC's Answer merely admits or denies allegations in the Plaintiff's *Complaint* and does not assert any substantive defense based on the merits of the case. ASC does generally deny certain allegations contained in Debtors' Complaint, but ASC makes no effort to provide facts to support its position with respect to most of these allegations. ASC did specifically deny that it received a mortgage payment in May 2006 or September 2006, and admitted that it applied $905.80 in attorneys' fees against Debtors' account, but alleged that those fees were for the pre-petition foreclosure. Otherwise, ASC made only general denials and provided no proof or specific allegations relating to those denials. Specifically, ASC

14

made no attempt to explain the transactions on the transaction history that it provided to the Debtors. If the Debtors had misunderstood the history, ASC could have attempted to explain what it believed the history reported in its Answer. Further, with respect to notice of the interest rate change, ASC denied that it failed to provide notice, but offered no proof of such notice or even an allegation that notice was provided in a specific form or on a specific date. Finally, at the December 6, 2007 hearing, ASC provided no substantive defense to the Debtors' Complaint. The Court finds ASC has not shown it has a meritorious defense to Debtors' Complaint.

**C.      Prejudice upon Excuse of the Default.**

Finally, the Court also examines whether the Debtors would be prejudiced if the default were excused. Setting aside the default "must prejudice plaintiff in a more concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Johnson*, 140 F.3d at 785 (quoting *Bethesda v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)).

ASC argues that there has not been any substantial prejudice to the Debtors as a result of ASC's tardy Answer. ASC claims the only prejudice to the Debtors would be to perform discovery to prove the allegations in their Complaint should the Court set aside the default. ASC points out that the Debtors make approximately 72 different allegations in their Complaint. ASC argues that if a default judgment is entered, it will not have an opportunity to dispute those allegations, and the only remaining dispute would be about damages. *See*

*Everyday Learning Corp. V. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) ("When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding.").

The Debtors argue that excusing ASC's default will lead to increased difficulties in discovery and greater opportunities for fraud and collusion. Debtors assert that discovery will be hindered because ASC's attorney, Bonial, acted in bad faith by making the argument that Bonial had not received the Complaint. Debtors argue that it is an ordinary practice of Ms. Bonial's office to make assertions without first investigating them, which is evidenced by Ms. Bonial's contentions that she has not received pleadings and orders, even though they have been mailed to her. Debtors argue that there is no reason to believe they would receive any better treatment in this case than they previously have, or than the Court received in *In re Graves*. Debtors cite *Inman v. American Home Furniture Placement*, 120 F.3d 117, 118 (8th Cir. 1997), in support of their argument that ASC chose its counsel at its own peril, and is better suited to bear the risk of its counsel's behavior.

This Court finds ASC and its counsel to be blameworthy and culpable, and is convinced that this conduct would indeed be inflicted on the Debtors were this case allowed to proceed. The Court finds it of great importance and relevance that Bonial has not appeared on behalf of ASC in this case but has hired local counsel *at the last moment* to appear instead. Further, ASC has allowed or possibly directed Bonial to proceed in this

reckless manner, and has not retained new counsel. Despite Bonial's failure to file a timely answer in this case, and Bonial's failure to arrange for local counsel well in advance of the hearings for which counsel was retained, Bonial remains lead counsel on this case. This Court is convinced that the behavior of ASC and its lead counsel will prejudice the Debtors in moving forward and that either or both lack sufficient respect for the Court or opposing counsel to justify allowing a trial on the merits to proceed.

## CONCLUSION

This is a motion to set aside the Court's Entry of Default, and as such, ASC's second chance to present evidence. With full benefit of the Court's prior order rejecting counsel's "improper service" argument, ASC chose to proceed on legal arguments only. The conduct of ASC and Bonial in arguing that Bonial was not a proper agent for service (when she filed a pleading in this case stating that she was the authorized agent of service), or that the Complaint and Summons was not received (when there was uncontroverted proof that it was delivered to Bonial's law firm) alone is sufficient for the Court to find contumacious conduct. After this second hearing and ASC's failure to present evidence or to send lead counsel or a corporate representative, together with the evidence presented by Debtors that Bonial's conduct represents a "pattern," the Court further finds that the conduct of ASC and its lead counsel will prejudice the Debtors if this case were to proceed to trial. Finally, even if ASC or its lead counsel had provided evidence showing its behavior was in good faith, ASC has failed to present a meritorious defense – instead, it relied on general admissions and denials

in its Answer even though its Motion to Set Aside Entry of Default clearly showed it knew a meritorious defense was required.

For these reasons, this Court will not set aside the *Entry of Default*. The Court will next examine whether the Debtors' Complaint sets forth sufficient facts to warrant relief, and will enter a separate Order on the Debtors' *Motion for Default Judgment,* and if necessary, set a hearing on damages. Accordingly, it is hereby

**ORDERED** that ASC's *Motion to Set Aside Entry of Default* is **DENIED**; it is further

**ORDERED** that Debtors' *Motion to Strike Answer* is **GRANTED**; and it is further

**ORDERED** that Debtors' Motion for Default Judgment will be ruled upon in a subsequent Order.

**IT IS SO ORDERED.**

_____
HONORABLE AUDREY R. EVANS
UNITED STATES BANKRUPTCY JUDGE

DATE: May 22, 2008

cc: Joel Hargis, Attorney for Debtors
     Hilary Bonial, Attorney for Defendant
     Tripp Wetzel, Attorney for Defendant
     Trustee
     U.S. Trustee

18